[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15199

_____

D. C. Docket No. 03-00844-CV-HES

WILLIAM EARL SWEET,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT
OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 23, 2006)

Before EDMONDSON, Chief Judge, MARCUS and PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

In this capital case, William Earl Sweet appeals the district court's dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Sweet argues that the district court erred in dismissing his case as untimely. After thorough review, we affirm.

## I.

The essential facts of this case, which we take from the opinion of the Supreme Court of Florida affirming Sweet's conviction and sentence, are these:

> On June 6, 1990, Marcine Cofer was attacked in her apartment and beaten and robbed by three men. She could identify two of the men by their street names. On June 26, 1990, she was taken by Detective Robinson to the police station to look at pictures to attempt to identify the third assailant. When Robinson dropped Cofer off at her apartment, William Sweet was standing nearby and saw her leave the detective. Unknown to Cofer, Sweet had previously implicated himself in the robbery by telling a friend that he had committed the robbery or that he had ordered it done. Cofer asked her next-door neighbor, Mattie Bryant, to allow the neighbor's daughters, Felicia, thirteen, and Sharon, twelve, to stay with Cofer in her apartment that night. Mattie agreed, and the children went over to Cofer's apartment around 8 p.m.

> At approximately 1 a.m. that evening, Sharon was watching television in the living room of Cofer's apartment when she heard a loud kick on the apartment door. She reported this to Cofer, who was sleeping in the bedroom, but because the person had apparently left, Cofer told Sharon not to worry about it and went back to sleep. Shortly thereafter, Sharon saw someone pulling on the living room screen. She awakened Cofer. The two then went to the door of the apartment, looked out the peephole, and saw Sweet standing outside. Sweet called Cofer by name and ordered her to open the door.

2

At Cofer's direction, Felicia pounded on the bathroom wall to get Mattie's attention in the apartment next door, and a few minutes later Mattie came over. The four then lined up at the door, with Cofer standing in the back of the group. When they opened the door to leave, Sweet got his foot in the door and forced his way into the apartment. Sweet's face was partially covered by a pair of pants. He first shot Cofer and then shot the other three people, killing Felicia. Six shots were fired. Cofer, Mattie, and Sharon were shot in the thigh, ankle and thigh, and buttock, respectively, and Felicia was shot in the hand and in the abdomen.

Sweet was convicted of first-degree murder, three counts of attempted first-degree murder, and burglary. The jury recommended a sentence of death by a vote of ten to two, and the trial court followed this recommendation.

Sweet v. State, 624 So. 2d 1138, 1139 (Fla. 1993) ("Sweet I").

Sweet's conviction and sentence were affirmed on direct appeal. Sweet I.

Sweet then filed a motion for post-conviction relief in the state trial court. The

motion was denied, and the Supreme Court of Florida affirmed on January 31,

2002. Sweet v. State, 810 So. 2d 854 (Fla. 2002) ("Sweet II"). While the appeal

of his state post-conviction motion was pending, Sweet petitioned the Supreme

Court of Florida for a writ of habeas corpus. That petition also was denied on June

13, 2002. Sweet v. Moore, 822 So. 2d 1269 (Fla. 2002) ("Sweet III").

On May 8, 2003, Sweet filed a second motion for post-conviction relief in

the state trial court, this time raising a claim arising under Ring v. Arizona, 536

U.S. 584 (2002). The trial court denied the motion, concluding that the motion

3

was "untimely and facially insufficient. Fla. R. Crim. P. 3.851(d)(1); 3.851(e)(1)(E); 3.851(e)(2)(A); 3.851(e)(2)(B) (2000)." Moreover, the state trial court held, even assuming, arguendo, that Sweet's motion was timely and sufficient, on the merits the motion had to be denied because the Supreme Court of Florida had already rejected this claim in other cases. The Supreme Court of Florida summarily affirmed the dismissal of Sweet's motion for relief. Sweet v. State, No. SC04-514, 2004 Fla. LEXIS 2451 (Fla. Dec. 20, 2004). The state's highest court released it's opinion on December 20, 2004, and the mandate issued on April 11, 2005.

Sweet then filed the instant petition for habeas relief in the United States District Court for the Middle District of Florida on January 18, 2005. The district court concluded that the petition was barred by the one-year statute of limitations found in 28 U.S.C. § 2244(d). Sweet's one-year period to file a federal habeas petition had expired on June 14, 2003 and his state Ring motion did not toll that period because it was not properly filed in the state court. We issued a certificate of appealability to consider the district court's timeliness ruling, and now review it de novo. Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000).

## II.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

4

codified at 28 U.S.C. § 2244(d), imposes a one-year period of limitation on federal habeas petitions filed by state prisoners:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Sweet's conviction became final before April 24, 1996, the day AEDPA became effective. Accordingly, absent any tolling, Sweet had until April 23, 1997, to file a federal habeas petition. Siebert v. Campbell, 334 F.3d 1018, 1021 (11th Cir. 2003).

5

However, Sweet's one-year federal period was tolled because he had a state application for post-conviction relief pending on April 24, 1996. Indeed, the parties agree, correctly we believe, that Sweet had "properly filed" applications for post-conviction relief continuously pending in the Florida courts until June 13, 2002, when the Supreme Court of Florida finally denied his petition for a writ of habeas corpus. Thus, Sweet's one-year period began to run on June 14, 2002, and, absent any further tolling, it expired on June 14, 2003.

Sweet maintains that his one-year federal period was again tolled on May 8, 2003, when, with 37 days remaining on the federal clock, he filed his second motion for post-conviction relief, pursuant to Ring, in the state trial court. That motion was pending until April 11, 2005, when the Supreme Court of Florida issued the mandate affirming the trial court's dismissal. See Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (noting that in Florida, a post-conviction motion is pending until the appellate court issues its mandate). Thus, if Sweet were correct in arguing that the one-year period was tolled by the state Ring motion, the federal petition he filed on January 18, 2005, would be timely. But, because we agree with the district court that the Ring motion of May 8, 2003, was not "properly filed," it did not toll the one-year period of limitation, and Sweet's petition for habeas relief in the district court was more than 19 months late.

6

This much is clear: an application for state post-conviction or other collateral review tolls the federal period of limitation only if it was "properly filed." 28 U.S.C. § 2244(d)(2). The statute provides no further definition of the term "properly filed," but the Supreme Court has had several occasions to construe those words. First, in Artuz v. Bennett, the Court considered whether a state habeas petition was "properly filed" when the claims it had raised were subject to two independent procedural bars under state law. 531 U.S. 4 (2000). The Court explained the meaning of the term "properly filed" this way:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Id. at 8 (citations and footnote omitted). The Court distinguished between two basic concepts -- whether an application had been "properly filed" and whether the claims contained in that application were meritorious and free of procedural bar. Id. at 9. The procedural bars at issue in Artuz -- a bar against raising an issue that had been previously determined on direct appeal and a bar against raising a claim that was available on direct appeal but which was not raised because of the defendant's unjustifiable failure -- were both "condition[s] to obtaining relief," as

7

opposed to "condition[s] to filing."  Id. at 10-11.  Thus, the Court concluded that the state petition had been properly filed.  Id.

Notably, the Artuz Court was not faced with a timeliness question; its holding was limited to whether a claim filed in a state petition that was subject to a procedural bar made the filing of the entire application improper.  Indeed, the Court expressed "no view on the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed."  Id. at 8 n.2.[1]

Recently, the Supreme Court squarely addressed the question it left open in Artuz.  In Pace v. DiGuglielmo, the Court held that a state post-conviction petition

---

[1]The Florida rule that provides the time requirements for post-conviction capital motions says that "[a]ny motion to vacate judgment of conviction and sentence of death shall be filed by the prisoner within 1 year after the judgment and sentence become final."  Fla. R. Crim. P. 3.851(d)(1).  That rule provides exceptions, however:

> (2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges that
>
>     (A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
>
>     (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
>
>     (C) postconviction counsel, through neglect, failed to file the motion.

Fla. R. Crim. P. 3.851(d)(2).

8

rejected by the state court as being untimely under state law is not "properly filed" within the meaning of AEDPA's § 2244(d)(2). 544 U.S. 408 (2005). The Court explained:

> In Artuz v. Bennett, we held that time limits on postconviction petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed." However, we reserved the question we face here: "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." Having now considered the question, we see no grounds for treating the two differently.
>
> As in Artuz, we are guided by the "common usage" and "commo[n] underst[anding]" of the phrase "properly filed." In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

Id. at 413 (alterations in original) (citations omitted). Quite simply, the Supreme Court said that "[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)," because, "time limits, no matter their form, are 'filing' conditions." Id. at 414, 417 (internal quotation marks and alterations omitted) (emphasis added). The Supreme Court held that "[b]ecause the state court rejected petitioner's [post-conviction] petition as

9

untimely, it was not 'properly filed' and he is not entitled to statutory tolling under § 2244(d)(2)." Id. at 417. Thus, under Artuz and Pace, if the Ring petition Sweet filed in state court was not timely under state law, then it would not be "properly filed" under AEDPA and his federal habeas petition would be untimely.

The state trial court's ruling was unambiguous; it held that the Ring motion was untimely. Moreover, the court found that even if it considered the motion to be timely, it would still fail on the merits, because the Supreme Court of Florida had previously concluded that the state's capital sentencing scheme did not violate Ring. The Supreme Court of Florida summarily affirmed the trial court's ruling. Sweet argues, however, that because the Supreme Court of Florida has consistently ruled on the merits of untimely Ring petitions, we should construe its summary ruling in this case as having affirmed only the merits portion of the trial court's decision. We are unpersuaded.

The Supreme Court has provided clear guidance on how to construe a summary, or unexplained state court decision. In Ylst v. Nunnemaker, the Court held that when a state appellate court affirms a lower court's ruling without articulating its reasons for doing so, we should apply "the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon

10

the same ground." 501 U.S. 797, 803 (1991). The Court explained that in the context of a summary affirmance, "silence implies consent"; appellate courts generally "affirm[] without further discussion when they agree, not when they disagree, with the reasons given below." Id. at 804. In short, "[t]he essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect -- which simply 'looks through' them to the last reasoned decision -- most nearly reflects the role they are ordinarily intended to play." Id.; see also Glock v. Singletary, 65 F.3d 878, 882 n.4 (11th Cir. 1995) (en banc) (holding that "[w]hen the last state court to consider the claim summarily denies relief, we look to the last state court to address the claim to determine" if it considered the claim procedurally defaulted); Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court"). The Supreme Court made clear, however, that the presumption is rebuttable; "strong evidence can refute it." Ylst, 501 U.S. at 804.

The Supreme Court of Florida summarily affirmed the denial of Sweet's Ring motion. Thus, in the absence of any explanation, we "look through" the opinion to the last reasoned decision, which in this case came from the state trial

11

court. That court denied the claim because it was untimely, and, in the alternative, also failed on the merits too. In the absence of "strong evidence" to rebut the normal presumption that silence implies consent, we presume the Supreme Court of Florida's ruling to have rested on the same grounds. Sweet has offered us no reason, let alone a strong one, for why we should disregard the normal presumption. Thus, since the last reasoned opinion from the state concluded that under state law, the Ring motion was untimely, it was not "properly filed" under § 2244(d), and it could not toll the federal one-year period of limitation.

Sweet offers three reasons, nevertheless, for why the Ring petition filed in state court should toll the time for filing his federal habeas petition. First, he says that the state court denied his Ring petition both for timeliness reasons and on the merits; thus, it was "properly filed." Second, he contends that any contrary ruling would deprive him of both the equal protection and due process of the law because, he maintains, the Supreme Court of Florida has regularly denied other, untimely Ring petitions on the merits. Finally, he suggests, the state waived the right to raise the timeliness issue in the first place, by not raising it as an affirmative defense in its first responsive pleading in the district court. Again, we are unconvinced.

First, Sweet concedes, as he must, that the state trial court denied his Ring

12

motion because it was untimely.  He says we should not rely on the timeliness ruling, but rather consider only the trial court's alternative holding that the motion would have otherwise failed on the merits.  This argument is squarely foreclosed by Supreme Court case law.

In Carey v. Saffold, the Court considered a postconviction, state habeas motion that had been denied by the California Supreme Court in a one-sentence opinion "on the merits and for lack of diligence."  536 U.S. 214, 217-18 (2002). The Court held that when a state court determines that a motion is untimely, "that [is] the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits."  Id. at 226. In other words, when a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not "properly filed." Id; see also Pace, 544 U.S. at 414 ("What we intimated in Saffold we now hold: When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." (internal quotation marks and alteration omitted)); Brooks v. Walls, 301 F.3d 839, 841 (7th Cir. 2002) ("Saffold tells us that both aspects of a dual-ground decision (substance and procedure) must be respected, so that an untimely petition is not 'properly filed' even if the court

13

addresses the merits -- whether or not the 'timeliness ruling was 'entangled' with the merits.'"); <u>Satterfield v. Johnson</u>, 434 F.3d 185, 192 (3d Cir. 2006) (citing <u>Saffold</u> for the proposition that "[i]f a state court determines that a petition is untimely, that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits" (internal quotation marks omitted)); <u>Bonner v. Carey</u>, 425 F.3d 1145, 1148-49 (9th Cir. 2005) (finding it irrelevant that the state court had ruled on the merits of the petition because that court had also determined that the petition was untimely).

In <u>Saffold</u> the Supreme Court offered at least three reasons to explain why a state court also may reach the merits of a claim, after having determined that the petition was untimely. First, the merits determination may be easy to make. Moreover, a trial court may simply want to provide a reviewing court with alternative grounds for a decision. Finally, a court may wish to explain to a prisoner (who may not have had an attorney) that it was not merely a procedural technicality that precluded him from obtaining relief. <u>Saffold</u>, 536 U.S. at 225-26. Each of those rationales could readily apply in this case. In short, when a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not "properly

14

filed" for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims.

Next, Sweet claims that because the Supreme Court of Florida has routinely denied otherwise untimely Ring petitions solely on the merits, that court deprived him of the equal protection and due process of the law by denying his petition on the basis of the time bar contained in Florida Rule 3.851.[2]

To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); Damiano v. Florida Parole and Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986). Sweet's equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners. Sweet cites seven cases from the Supreme Court of Florida where, he contends, that court issued merits rulings on Ring

---

[2]Neither argument is presented with great clarity. However, Sweet presents absolutely no argument or citation of authority in support of his due process claim. Thus, we decline to address it. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not argued on appeal are deemed waived, and that a passing reference to an issue in a brief was insufficient to properly raise that issue). Moreover, the state argues that Sweet failed to raise an equal protection claim before the district court and that we should refuse to consider it on appeal as well. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). But, Sweet raised the equal protection claim, albeit briefly, in his motion for a new trial filed with the district court.

15

claims.[3]  Those opinions are not helpful, however, because not one of them

explicitly addressed a prisoner similarly situated to Sweet, that is, a person who

attempted to file a Ring petition that also was otherwise barred by the one-year

prohibition in Florida Rule 3.851.  Absent some indicia that Florida Rule 3.851 has

been applied arbitrarily, we are left with nothing more than a general rule that

applies equally to every person.  That alone will not support a claimed violation of

the equal protection clause.  See, e.g., New York City Transit Auth. v. Beazer, 440

U.S. 568, 587 (1979) ("The [Equal Protection] Clause announces a fundamental

principle: the State must govern impartially.  General rules that apply

evenhandedly to all persons within the jurisdiction unquestionably comply with

this principle.").

More basically, Sweet's equal protection claim fails because he has not

alleged, let alone established that he was treated differently on account of some

form of invidious discrimination tied to a constitutionally protected interest.  He

has not even claimed that he was treated differently from others because of race,

religion, or national origin.  See Snowden v. Hughes, 321 U.S. 1, 8 (1944) ("The

unlawful administration . . . of a state statute fair on its face, resulting in its unequal

---

[3]Sweet cites Johnson v. State, No. SC05-701 (Fla. March 17, 2006); Washington v. State, 907 So. 2d 512 (Fla. 2005); Johnson v. State, 904 So. 2d 400 (Fla. 2005); Shere v. State, 903 So. 2d 936 (Fla. 2005); Asay v. State, 892 So. 2d 1011 (Fla. 2004); Correll v. State, 880 So. 2d 1210 (Fla. 2004); and Ponticelli v. State, 879 So. 2d 623 (Fla. 2004).

16

application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require identical treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); see also Cruz v. Skelton, 543 F.2d 86, 92-93 (5th Cir. 1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").  Simply put, Sweet has not established that he was treated differently from similarly situated prisoners or that he was treated differently on account of invidious discrimination.  The Supreme Court of Florida did not deny Sweet of the equal protection of the law by summarily affirming the denial of an untimely Ring petition.

Finally, Sweet says that the state failed to preserve its timeliness argument because it failed to raise the issue in the first responsive pleading filed in federal

17

court. The district court expressly rejected this claim. We review the court's decision only for an abuse of discretion. See Day v. McDonough, 126 S. Ct. 1675, 1679 (2006); Amoco Oil Co. v. Gomez, 379 F.3d 1266, 1276 (11th Cir. 2004). On this record, no abuse of discretion is evident.

The procedural history is clear enough. Sweet filed his federal habeas petition, and the district court ordered the state to respond. In the initial response, the state did not claim the petition was untimely under § 2244(d). Instead, the state raised timeliness in a motion for summary judgment, which it filed some 36 days after its first response. The state observed that the Supreme Court had just (approximately 17 days earlier) decided Pace, where the Court held that a state petition rejected as untimely under state law, could not be "properly filed" for the purposes of § 2244. The district court rejected Sweet's argument that the state had waived the timeliness issue, relying on our decision in Day v. Crosby, 391 F.3d 1192 (11th Cir. 2004), which the Supreme Court recently affirmed. Day v. McDonough, 126 S. Ct. 1675 (2006).

In Day, the state filed its answer in a habeas case and affirmatively conceded that the federal petition was timely filed. A magistrate judge reviewed the pleadings and determined that the state had made a calculation error. The court said that the petitioner had waited 388 days before filing his federal petition,

18

thereby making it untimely. The magistrate judge ordered the parties to show cause why the case should not be dismissed, and, after the petitioner had an opportunity to respond, the district court dismissed the case. We affirmed. Day, 391 F.3d at 1193-95.

The Supreme Court granted certiorari to determine "whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, once the State has answered the petition without contesting its timeliness." Day, 126 S. Ct. at 1679. The Supreme Court framed its holding in these terms:

> Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto. Fed. Rules Civ. Proc. 8(c), 12(b), and 15(a). And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense. In this case, however, the federal court confronted no intelligent waiver on the State's part, only an evident miscalculation of the elapsed time under a statute designed to impose a tight time constraint on federal habeas petitioners. In the circumstances here presented, we hold, the federal court had discretion to correct the State's error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation.

Id. at 1679-80 (footnote omitted). The Court concluded that the "district courts are permitted, but not obligated, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." Id. at 1684. That holding is consistent with our prior case law. See Jackson v. Sec'y for Dep't of Corr., 292 F.3d 1347, 1349 (11th Cir. 2002) (holding that a district court has the discretion to raise a § 2254 timeliness

19

consideration sua sponte).

Sweet argues that Day and Jackson are somehow distinguishable because here the district court did not raise the issue sua sponte, but, rather, entertained and granted the motion by the state only at the summary judgment stage. But if the district court had the authority to raise the issue of timeliness entirely on its own, it seems clear to us that it also had the authority to do so at the urging of one of the parties.

This conclusion is supported by the Supreme Court's analysis in Day. There, the Court squarely adopted a flexible and intermediate rule regarding waiver, allowing courts to exercise discretion in each case to decide whether the administration of justice is better served by dismissing a case on statute of limitation grounds or by reaching the merits of the petition. Id. It noted that, under the facts of Day, the magistrate judge, instead of acting sua sponte, could have informed the state of its obvious computation error and entertained an amendment to the state's answer. Id. Plainly, such an amendment would have been permitted under Federal Rule of Civil Procedure 15(a) and by 28 U.S.C. § 2243, which allows the state to amend an answer in a habeas proceeding by leave of court. Day, 126 S. Ct. at 1683. The Court concluded the district court acted well within its discretion in raising the timeliness issue sua sponte because it could have achieved

20

the same result simply by suggesting and then permitting an amendment to the answer. "Recognizing that an amendment to the State's answer might have obviated this controversy, we see no dispositive difference between that route, and the one taken here." Id. (footnote omitted).

Here, the state raised the timeliness defense only 36 days after it had filed a response to the show cause order. It did so in a motion for summary judgment. However, it could have done so just as easily by seeking leave to amend its response to the district court's show cause order. The district judge then, undeniably, would have had the authority to grant the motion to amend, and the issue would have been properly preserved for a motion to dismiss or on summary judgment. If anything, the alternative procedure employed in this case is less attenuated than the one approved in Day (where the Court noted that the district court could have alerted the state to the error, suggested an amended answer, and then granted the motion to amend) because, here, the state itself raised the issue by filing the motion for summary judgment. Essentially, the state neglected one step in the process: it should have filed a motion to amend its earlier pleading before filing its motion for summary judgment. But, under the flexible approach endorsed by the Supreme Court, that error did not prevent the state from raising timeliness. This conclusion is bolstered because the state had an altogether sound reason for

21

not raising the issue in its first pleading. When it filed its response to the show cause order, the Supreme Court had not yet issued its opinion in <u>Pace</u>, which established that an untimely state petition is not "properly filed."[4] The district court did not abuse its considerable discretion by allowing the state to raise the affirmative defense of timeliness in a motion for summary judgment.

### III.

Sweet's <u>Ring</u> petition was not timely filed in state court and, therefore, under § 2244(d), it was not "properly filed" and could not toll the time for filing his federal habeas petition. The petition was untimely; accordingly, we affirm.

**AFFIRMED.**

---

[4]Moreover, our cases interpreting Federal Rule of Civil Procedure 8(c), which is applicable here, <u>see</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 125 S. Ct. 2562, 2569 (2005) (noting that under the Rules Governing Section 2254 Cases In The United States District Courts, the Federal Rules of Civil Procedure apply in habeas cases to the extent that they are not inconsistent with any statutory provisions or the habeas rules); <u>Long v. Wilson</u>, 393 F.3d 390, 397 (3d Cir. 2004) (analyzing Rule 8(c) case law in a habeas action), support a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff. <u>See</u> <u>Grant v. Preferred Research, Inc.</u>, 885 F.2d 795, 797 (11th Cir. 1989); <u>Hassan v. U.S. Postal Serv.</u>, 842 F.2d 260, 263 (11th Cir. 1988). And it is settled that a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means. <u>Grant</u>, 885 F.2d at 797. Here, the state raised the affirmative defense in its summary judgment motion only 36 days after its first pleading, and Sweet was given every opportunity to respond. Indeed, he does not allege that he was prejudiced in any way by the delay.