[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11936
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A97-927-671,
A97-927-672

LUZ M. QUIJANO,
JAIME QUIJANO-GONZALEZ,
DAVID QUIJANO-PEREZ,
JOHN QUIJANO-PEREZ,

Petitioners-Appellants,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

No. 08-17156
Non-Argument Calendar

_____

Agency Nos. A097-927-671,
A097-927-672

LUZ M. QUIJANO,
a.k.a. Luz Marina Perez Roa,
JAIME QUIJANO-GONZALEZ,

DAVID QUIJANO-PEREZ,
JOHN QUIJANO-PEREZ,

                                                    Petitioners,

                              versus

U.S. ATTORNEY GENERAL,

                                          Respondent-Appellee.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
_____

(October 6, 2009)

Before TJOFLAT, EDMONDSON and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated case, petitioners Luz Quijano ("Luz"), her husband,

Jaime Quijano-Gonzalez ("Jaime"), and their children, David Quijano-Perez

("David") and John Quijano-Perez ("John"), through counsel,[1] seek review of the

BIA's decision affirming the IJ's order finding them removable and denying their

application for asylum and withholding of removal.

_____

[1]Because Luz listed Jaime, David, and John as derivative applicants, the basis for their asylum claims is the same as hers. See 8 U.S.C. § 1158(b)(3); Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (holding that the withholding of removal statute does not create derivative rights). Accordingly, we will only refer to Luz for the sake of convenience.

2

On appeal, Luz first argues that we should waive the one-year deadline for filing an asylum application, due to extraordinary circumstances. Second, she argues that the BIA's finding that she failed to establish past persecution or a clear probability of future persecution is not supported by substantial evidence. Finally, she argues, in passing, that the IJ was biased against her.[2]

I.

We review our subject matter jurisdiction de novo. Frech v. U.S. Atty. Gen., 491 F.3d 1277, 1280 (11th Cir. 2007). An alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within [one] year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The BIA may consider a late application "if the alien demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." 8 U.S.C. § 1158(a)(2)(D).

Section 1158(a)(3), however, divests us of jurisdiction to review any such

---

[2]Following denial of her asylum request, Luz moved the BIA for reconsideration, which the BIA denied, but she does not address this motion on appeal. Likewise, she does not challenge the denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Accordingly, she has waived any such claims. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (holding that issues not raised on appeal are deemed abandoned).

determination. 8 U.S.C. § 1158(a)(3); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). In addition, we have held that § 106(a)(1)(A)(ii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310, which amended the INA to provide for appellate jurisdiction over "constitutional claims or questions of law," did not affect our prior precedents. See Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005); 8 U.S.C. § 1252(a)(2)(D).

Because we lack jurisdiction to consider Luz's untimely asylum claim, or the derivative asylum claims of Jaime, David, and John, we dismiss the petition in this respect.

II.

When the BIA issues a decision but does not expressly adopt the IJ's opinion we review only the BIA's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the BIA's legal conclusions de novo and its factual determinations under the substantial evidence test; we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). The substantial evidence test is "highly deferential" and does not allow "reweigh[ing] the evidence from scratch." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (quotations omitted). "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it."

4

Mendoza, 327 F.3d at 1287.

An alien seeking withholding of removal must show that her "life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion" if she returned to the country in question. 8 U.S.C. § 1231(b)(3)(A). To do so, she must demonstrate that she "more-likely-than-not would be persecuted or tortured upon h[er] return to the country in question." Mendoza, 327 F.3d at 1287.

While the INA does not define persecution, we have held that an alien must present "specific, detailed facts showing a good reason to fear that . . . she will be singled out" on account of a statutory factor. Al Najjar, 257 F.3d at 1287 n.16 (quotation omitted). Further, "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted). "In determining whether an alien has suffered past persecution, the IJ [or BIA] must consider the cumulative effect of the allegedly persecutory incidents." De Santamaria v. United States Att'y Gen., 525 F.3d 999, 1008 (11th Cir. 2008).

We previously have refused to reverse the BIA in non-violent scenarios, including (1) where a petitioner was detained for five days based on his religious beliefs, "during which he was not harmed," but was subjected to psychological coercion, Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006), and

5

(2) where a petitioner received "menacing telephone calls and threats" and the restaurant where she worked was bombed, Sepulveda, 401 F.3d at 1231. Nevertheless, we have rejected "a rigid requirement of physical injury." De Santamaria, 525 F.3d at 1008.

The extreme scenarios that have compelled us to grant petitions on the basis of past persecution include: (1) "repeated death threats, two physical attacks, the murder of a family friend, and a kidnapping cut short only by a harrowing escape," id. at 1009; (2) where "the FARC pointed a gun at [the petitioner's] head and then broke his nose with the butt of a rifle," Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007); and (3) where "two FARC members on motorcycles followed [the petitioner] and intentionally shot at him in his moving car," Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1234 (11th Cir. 2007).

If an alien establishes past persecution based on a protected ground, she is entitled to a rebuttable presumption that she will face persecution upon her return to that country. Sepulveda, 401 F.3d at 1231. Otherwise, to establish eligibility for withholding of removal, an alien must show that it is "more likely than not [that she] will be persecuted or tortured" based on a protected ground, upon returning to her country. Id. at 1232 (quotation omitted) (holding that the petitioner did not have a well-founded fear of future persecution based on the passage of time since she fled and the fact that millions around the country shared her political views); 8

6

U.S.C. § 1231(b)(3). We have held that a petitioner's claim of future persecution "was contradicted by his testimony that his son and his parents [had] remained unharmed in the region of Colombia where [he] allegedly was threatened." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

Assuming that the Revolutionary Armed Forces of Colombia ("FARC") targeted Luz, at least in part, based on her Pentecostal religious beliefs, substantial evidence supports the BIA's conclusion that their actions did not rise to the level of past persecution. While Luz alleged persecution based on (1) a brief detention and interrogation by FARC members at her church, (2) threatening calls and pamphlets she received after Jaime interviewed a FARC defector on his Christian radio show, and (3) non-violent incidents at her children's school where unknown persons removed or attempted to remove personal records and attempted to sign her children out of school, these events are distinguishable from the cases in which we held that the record compelled a finding of past persecution because those cases involved violent attacks. The present case is more similar to the brief detention and harassment involved in Zheng and Sepulveda, in which we refused to grant the petitions.

Because Luz did not establish past persecution, she was not entitled to a presumption of future persecution. The record does not compel the conclusion that Luz likely will be singled out for future persecution based on a protected ground

upon her return, because (1) she waited over three years after arriving in the United States before filing for asylum, which undercuts her claim that she actually fears persecution, (2) more than nine years have elapsed since Jaime interviewed the FARC defector, and (3) Luz's father – a religious leader in the same Pentecostal Church allegedly targeted by the FARC – has remained in Colombia unharmed. Accordingly, substantial evidence supports the BIA's denial of withholding of removal.

III.

We review constitutional challenges de novo. Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006). Nevertheless, "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned." Sepulveda, 401 F.3d at 1228 n.2; Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318 n.2 (11th Cir. 2006) (declining to address a due process claim where the appellant presented "absolutely no argument or citation of authority in support"). We hold pleadings drafted by lawyers to a more stringent standard than pro se pleadings. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir.), cert. denied, 129 S.Ct. 632 (2008).

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Due process requires "a full and fair hearing." Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987). To prevail on a due process challenge,

8

however, an alien must show substantial prejudice – namely, that the outcome would have differed "in the absence of the alleged procedural deficiencies." Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).

To the extent Luz, with the benefit of counsel, attempts to challenge the fairness of her asylum hearing by claiming that the IJ was biased, she has abandoned this issue by failing to present any supporting legal analysis. Even assuming, arguendo, that she properly challenged the IJ's objectivity based on his findings that (a) the FARC's actions were not related to a protected ground, and (b) in any event, she could avoid the FARC by relocating, she has not shown that any alleged bias resulted in substantial prejudice to her case because those issues did not determine the outcome, as discussed above. Therefore, we deny the petition for review in this respect as well.

**PETITION DISMISSED IN PART, DENIED IN PART.**