[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14751
_____

D.C. Docket No. 1:07-cv-03052-JOF

RONALD B. EDWARDS,

Plaintiff-Appellant,

versus

FULTON COUNTY, GEORGIA,
THOMAS C. ANDREWS,
County Manager, In his Individual Capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 15, 2013)

Before TJOFLAT and COX, Circuit Judges, and MOLLOY,* District Judge.

PER CURIAM:

---

* Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Ronald Edwards appeals the district court's grant of summary judgment in favor of Fulton County, his employer, and Thomas Andrews, County Manager for the time period relevant to this appeal. Edwards sued the County and Andrews (together, the Defendants) alleging several claims, including a gender discrimination claim under the Equal Pay Act, a claim under 42 U.S.C. § 1983 for violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and a claim of race discrimination in violation of 42 U.S.C. § 1981. The complaint also alleged several state law claims. The district court granted summary judgment to the defendants on Edwards's Equal Pay Act claim and several other claims, and the court granted the Defendants' motion for judgment on the pleadings on Edwards's remaining claims. Edwards appeals. We find no merit in any issue on appeal except for the propriety of summary judgment on Edwards's Equal Pay Act claim. We therefore address only that issue. We reverse the district court's grant of summary judgment to the Defendants on the Equal Pay Act claim and affirm the district court's rulings on all other issues.

I.

Fulton County pays its salaried employees according to a "decision-band" method. (R.3-92-8 ¶¶ 9, 14.) When the County began using this method in 1991, the County commissioned a study to classify all of its existing positions according to the particular position's decision-making authority, job complexity, and

2

supervisory responsibilities. (*Id.* ¶¶ 13–14; *see also* R.3-92-9 ¶ 15.) The County then designated a salary range for each position on the basis of its decision-band classification. (R.3-97-12 at 18.) These ranges, adjusted at times for cost of living, are still used. (*Id.*)

Ronald Edwards began working for Fulton County in 1994 as a Community Development Specialist. (R.3-92-3 at 11–12.) As a Specialist, Edwards's decision-band classification was C43 and his salary corresponded to the C43 salary range. (*Id.* at 13–14.)

After a few years, Edwards took on responsibilities beyond his pay grade. Between 1999 and 2007, Edwards supervised two senior housing inspectors and managed two housing programs, (*id.* at 24–25,) responsibilities beyond his job description and C43 salary classification, (*id.* at 12–14; R.3-97-4, Ex. B1.) Despite these added responsibilities, his salary remained within the C43 salary range. (R.3-92-3 at 10–11, 14.) At times, he complained to his supervisors, and his supervisors reported the complaint to Andrews or other officials and recommended that Edwards receive greater compensation. (R.3-97-4, Exs. B1, B2.) The County never reached a decision regarding these complaints. (R.3-92-3, Ex. 1 at 2.)

Enter Carolyn Stewart, a woman who began as a Community Development Specialist with the County in January 2007. Like Edwards, Stewart was paid a salary in the C43 salary range. That month, however, the County promoted

3

Stewart to the position of Community Development Manager, a position classified as C52.  (R.3-92-8 ¶ 12.)  She managed three programs for the County, (R.92-5 at 9–10,) and supervised one employee, (R.3-92-3 at 25.)   As a C52 employee, Stewart was paid a higher salary than Edwards.[1]

Edwards filed a grievance with the County in May 2007 asserting that he believed the County would reclassify his position when he had taken on extra duties in 1999 and that, because the County had failed to do so, he had been underpaid since.  (R.3-92-3 at 11–14, Ex. 1.)  The County's Grievance Review Committee denied his grievance as untimely on June 15, 2007, (R.3-97-18,) though Edwards did not receive notification of the denial until July 11, after the time Edwards believed he could appeal the denial, (R.3-92-3 at 37.)  Edwards filed an appeal with Andrews anyway on July 31.  (R.3-97-20.)  Andrews took no action in response.

Edwards then filed his four-count complaint against the Defendants in December 2007, alleging (among other claims) that the Defendants violated the

---

[1] When Stewart began working as a Specialist on January 10, 2007, she was paid $62,546.  (R.3-92-8 ¶¶ 9–10.)  On January 24, all Fulton County employees received cost-of-living adjustments to their salaries, giving Stewart a C43 salary of $63,796.92.  (*Id.* ¶ 11.)  That same day, the County promoted Stewart to Manager, and her C52 salary as of July 31, 2007, was $71,581.  (R. 3-97-7.)

Though Edwards's salary in January 2007 remains unclear, his C43 salary was $63,729 as of May 2008.  (R.3-92-2 ¶ 28.)

4

Equal Pay Act. (R.1-1.) He sought damages for lost wages and attorney's fees. (*Id.* at 11.)

The Defendants moved for summary judgment on all claims.[2] The district court granted the motion as to Edwards's Equal Pay Act claim. Edwards appeals.

## II.

We review a district court's grant of summary judgment de novo. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). In doing so, we "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1368 (11th Cir. 1982) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1974)). We will affirm a grant of summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Am. Foreign Ins. Co. v. Colonial Mortg. Co.*, 936 F.2d 1162, 1164 (11th Cir. 1991).

Edwards appeals the district court's grant of the Defendants' motion for summary judgment on his Equal Pay Act claim. After careful review, we reverse.

---

[2] Andrews had moved to dismiss all claims against him in October 2008 on the ground that he was entitled to qualified immunity. (R.2-53.) The district court granted the motion. (R.2-56.) On Edwards's motion, however, the court reconsidered its judgment and denied Andrews's motion as to Edwards's § 1983 claim. (R.2-63.) Andrews filed an interlocutory appeal with this court challenging the denial of qualified immunity, and we affirmed. (R.2-80.)

5

III.

To establish a prima facie case of discrimination under the Equal Pay Act, a plaintiff must show that his or her employer paid employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1); *accord Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228 (1974).  Notably, because the prima facie case does not require a showing of an employer's discriminatory intent, the Act provides "a form of strict liability."  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) (citing *Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539 (11th Cir. 1991)).

Once a plaintiff establishes a prima facie case, the Act allows a defendant to show, by a preponderance of the evidence, that the disparate salaries are caused by a "seniority system," a "merit system," a production-quota system, or "any factor other than sex."  29 U.S.C. § 206(d)(1); *accord Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).  The employer's burden of proof on these affirmative defenses is "heavy," because it "must show that the factor of sex provided *no basis* for the wage differential."  *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (citations omitted).

6

If a defendant proves one of these affirmative defenses, the plaintiff's claim can survive a motion for summary judgment only if the plaintiff shows with affirmative evidence that the reason offered for the pay disparity was pretextual or was offered as a post-event justification. *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991).

The district court found that Edwards did not raise a genuine issue of material fact regarding whether his and Stewart's positions were equal within the meaning of the Act. It therefore determined that Edwards had not established the prima facie case and granted summary judgment to the Defendants. The district court did determine, however, that Edwards established a prima facie case for an unspecified period of time in either 2005 or 2006 when Edwards managed the so-called Home Program, the program Stewart later managed after her promotion to Manager. For this period, however, the district court found that the Defendants had successfully attributed the pay disparity to a factor other than sex: the gender-neutral decision-band system for determining salaries and Edwards's unsuccessful attempt to reclassify his job. The court also found that Edwards could not show pretext. Thus, the district court granted summary judgment to the Defendants on Edwards's entire Equal Pay Act claim.

7

We disagree with the district court's first determination and find that Edwards has indeed raised a genuine issue of material fact as to whether his and Stewart's positions were equal within the meaning of the Act.

To establish a prima facie case under the Act, a plaintiff must prove that the employer paid an employee of the opposite sex more for equal work in an equal position. 29 U.S.C. § 206(d)(1). Whether that employee of the opposite sex—typically called a comparator—performs equal work in an equal position depends on the "primary duties of each job," and the inquiry emphasizes "actual job content" over formal job titles or descriptions. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998). Moreover, the plaintiff need not show that his position and the comparator's are identical but rather that the two positions are "substantially equal." *Id.*

The summary judgment record indicates that a reasonable jury considering the duties actually performed by Edwards and Stewart could find the positions substantially equal. Stewart stated in her affidavit that Edwards's job and her job as Manager "were of equal complexity and difficulty" and that Edwards performed "the same job duties and functions that [she] performed in that [their] jobs involved the same responsibilities and required the same effort." (R.3-97-3 ¶ 4.) Edwards testifies in an affidavit that his duties and responsibilities matched those described in Stewart's job description. (R.3-97-15 ¶ 3.) Other evidence in the record

8

reasonably corroborates these statements.  One of Edwards's supervisors, John Robinson, said in his deposition that Edwards performed the work of a C52-level Manager rather than a C43 Specialist.  (R.3-97-11 at 23–25.)  A June 2006 departmental organization chart appears to give Edwards the same level of managerial responsibility that Stewart later assumed.  (R.3-97-3, Ex. A2.)  Two other County officials, Joseph Johnson and Camilla Moore, requested salary increases for Edwards because Edwards's position included a large number of managerial responsibilities.  (R.3-97-4, Exs. B1, B2.)  According to a 2008 e-mail written by Robert Brandes, another County official, Edwards's department had "admitted to working Ronald Edwards out of classification without compensation." (R.3-97-16.)

While Edwards and Stewart managed a slightly different number of programs, supervised a slightly different number of employees with different decision-band classifications, and had slightly different job titles, these facts fail to convince us that, viewing the evidence in the light most favorable to Edwards, no genuine issue of material fact existed as to the substantial equality of the two jobs. *See Arrington*, 139 F.3d at 876 (reversing a grant of summary judgment where appellant presented "significant evidence" that her actual job duties and the comparator's actual job duties were very similar, despite a disparity in formal job titles and descriptions); *Mulhall*, 19 F.3d at 592 ("If plaintiff's evidence, with all

9

inferences drawn in her favor, establishes an [Equal Pay Act] violation and there is sufficient evidence such that a jury could find in her favor, then summary judgment for defendants is improper."). We therefore reverse the district court's grant of summary judgment for Defendants on Edwards's Equal Pay Act claim.

We also disagree with the district court's grant of summary judgment on the Defendants' affirmative defense, which applied to the limited period of time when Edwards managed the Home Program. We conclude that the Defendants did not meet their burden to show the absence of a genuine dispute of material fact as to the "factor other than sex" defense.

Edwards first asserts error in the district court's consideration of the defense, arguing that the Defendants did not raise the defense in their Answer to the Complaint and, under Fed. R. Civ. P. 8(c), waived it.[3] It is true that a defendant intending to assert an affirmative defense must raise it in a responsive pleading, and failure to do so typically results in a waiver of the defense. *See Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1537 (11th Cir. 1983).

We have recognized, however, that a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff. *See Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350

_____

[3] Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense" in its responsive pleading. The parties do not dispute, and case law confirms, that the four statutory exceptions to Equal Pay Act liability constitute affirmative defenses within the meaning of Rule 8(c). *See Corning Glass*, 417 U.S. at 196, 94 S. Ct. at 2229.

10

(11th Cir. 2007) (acknowledging that, in cases where federal case law has identified specific affirmative defenses, we have "examined whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice" in determining whether the defendant waived the defense); *Sweet v. Sec'y, Dep't of Corrections*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006) ("[O]ur cases interpreting [Rule 8(c)] . . . support a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff."); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("[W]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue."); *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. Unit B Aug. 1981) ("Neglect to affirmatively plead [an affirmative defense] is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise."). We have also concluded that an omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense. *See Sweet*, 467 F.3d at 1321 n.4 (noting that "it is settled that a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means," such as the defendant's motion for summary judgment); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir.

11

2003) (holding that the district court did not err in permitting evidence of the Equal Pay Act affirmative defenses when, though not raised in responsive pleadings, the affirmative defenses had been raised in pretrial conference); *Grant v. Preferred Res., Inc.*, 885 F.2d 795, 797–98 (11th Cir. 1989) (determining that, though the defendant did not raise a statute-of-limitations defense in its responsive pleadings, it raised the defense in a motion for summary judgment filed one month before trial and thereby put plaintiff on notice that the defendant would rely on the defense); *Hassan*, 842 F.2d at 262–64 (holding that the district court did not err by considering a defendant's affirmative defense at trial when, though the defendant did not plead the affirmative defense, the defendant questioned the plaintiff extensively regarding the subject matter of the defense in a deposition and an interrogatory, thus giving notice that the defendant "planned to raise the issue").

Because the Defendants first raised the defense in their motion for summary judgment, which gave Edwards sufficient opportunity to respond to the defense, and because discovery largely focused on the gender-neutral decision-band classification system, which constitutes the subject matter of the defense, we cannot conclude that the district court abused its discretion[4] in denying that the

---

[4] "We review a district court's procedural ruling on waiver of an affirmative defense for abuse of discretion." *Proctor*, 494 F.3d at 1350 n.9; *accord Sweet*, 467 F.3d at 1320 (citing *Day v. McDonough*, 547 U.S. 198, 202, 126 S. Ct. 1675, 1679 (2006)).

12

Defendants prejudiced Edwards by raising the defense on summary judgment and rejecting the argument that the Defendants waived the defense.

Edwards next contends that the district court erred by concluding that no genuine issue of fact existed as to whether a factor other than sex solely accounted for the pay disparity, a conclusion upon which it based its grant of summary judgment to the Defendants for the time Edwards managed the Home Program.

According to the district court, the summary judgment record left no question that the sole reason for the disparity was the County's policy of refusing to approve position reclassifications by any method except formal grievance procedures. To obtain a salary commensurate with C52 employees like Stewart, the court found, Edwards needed to file a grievance with the County's Grievance Committee seeking to have his position reclassified.[5]  Edwards did so. The Committee, however, rejected his grievance as untimely, and Edwards did not appeal the Committee's determination through the available methods. Thus, "the original and unsuccessfully challenged classification of [Edwards's] position pursuant to a facially gender . . . neutral classification" was the factor other than sex that solely accounted for the disparity in Edwards's and Stewart's salaries. (R.4-108 at 26–27.)

---

[5] Edwards could have also sought the approval of the County Board of Commissioners to reclassify his position and receive a higher salary.  (R.3-92-9 ¶ 10.)

13

Again, the summary judgment record establishes a genuine issue of material fact as to whether the pay disparity was solely attributable to this gender-neutral system of determining salaries. On appeal, Edwards argues that Andrews could simply have approved a raise and failed to do so, and the evidence reasonably supports his argument. Both Camilla Moore and Joseph Johnson requested a raise—not reclassification—from Andrews, on Edwards's behalf. (R.3-97-4, Exs. B1, B2.) Robinson decided to seek a salary increase for Edwards after unsuccessfully trying to reclassify Edwards's position and hearing that the County was not entertaining reclassification requests at the time. (R.3-92-5 at 13–14.) Even Andrews confirms that he could have approved an employee's raise in salary. (R.3-97-12 at 17.) If Andrews could have approved a raise despite the decision-band system and did not, the Defendants have not fully attributed the pay disparity between Edwards's and Stewart's salaries to the system. Drawing all reasonable inferences in favor of Edwards, a genuine issue of material fact therefore remains as to whether the original classification of the Specialist position and Edwards's unsuccessful attempt to reclassify his job constituted the sole reasons for the pay disparity. The Defendants thus failed to show the absence of a genuine dispute of material fact as to their affirmative defense, and summary judgment was inappropriate.

V.

We reverse the district court's grant of summary judgment as to Edwards's

Equal Pay Act claim.  We affirm the remainder of the court's rulings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.