[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10693

_____

D.C. Docket No. 3:14-cv-00757-BJD-JBT

PHILIP WALTER JONES,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 29, 2018)

Before WILSON and NEWSOM, Circuit Judges, and VINSON,* District Judge.

---

*Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

VINSON, District Judge:

In June 2006, the petitioner, Philip Walter Jones, was convicted in a Florida state court of aggravated domestic battery (for shooting his wife) and sentenced to 20 years incarceration. After his conviction became final on September 18, 2007, he filed numerous motions for post-conviction relief in state court (including two petitions for habeas corpus; two motions to correct illegal sentence under Florida Rule of Criminal Procedure 3.800; and a petition for writ of mandamus), but only one of his several motions requires our attention. Specifically, on September 19, 2013—a full six years after his conviction became final—the petitioner moved to vacate his sentence based on newly discovered evidence under Rule 3.850 of the Florida Rules of Criminal Procedure. He alleged in this motion that he had only recently discovered that his trial counsel failed to tell him that the prosecutor had offered a pre-trial plea deal with ten years imprisonment, and that if he had been told of the plea offer at that time he would have accepted it instead of going to trial where, as noted, he was found guilty and sentenced to 20 years. He argued that his lawyer's failure to tell him about a plea offer that he would have accepted and that would have cut his prison time in half constituted "ineffective assistance of counsel [that] prejudiced him." The state trial court denied the motion by written order on November 6, 2013 (Trial Court Order), and Florida's First District Court of Appeal summarily affirmed without opinion on April 15, 2014.

2

Two months later, on June 27, 2014, the petitioner filed a federal petition for habeas corpus in the United States District Court for the Middle District of Florida. The respondents moved to dismiss the federal petition as untimely.  In granting the motion, the District Court held that the Rule 3.850 Motion was not "properly filed" in the state court and thus did not toll the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act (AEDPA), which (without tolling) expired nine days before he filed his federal petition.  The petitioner subsequently filed this appeal *pro se*, and we appointed him counsel and granted a Certificate of Appealability (COA) on one issue: whether the Rule 3.850 Motion was a "properly filed" tolling motion under 28 U.S.C. § 2244(d)(2), such that the District Court erred in dismissing his federal petition as time-barred.[1]

Therefore, the only question for us to decide is whether the petitioner's Rule 3.850 Motion was properly filed in state court so that it tolled ADEPA's one-year statute of limitations.  If it was properly filed, his federal petition was timely (and the District Court erred in dismissing it); if it wasn't, then his petition was untimely (and the District Court did not err).  After carefully reviewing the briefs and record

---

[1] The petitioner argues that he is entitled to equitable tolling in the alternative to statutory tolling under Section 2244(d)(2).  However, our review is cabined by the COA, so that argument is not properly before us. *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) ("[W]e hold that in an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA.").

*de novo*,[2] and having the benefit of oral argument, we find that the District Court did not err and we affirm.

## I.

## A.

We begin our analysis with some brief history and basic legal principles. The writ of habeas corpus is "'the most celebrated writ in the English law.'" *Fay v. Noia*, 372 U.S. 391, 399-400 (1963) (quoting 3 Blackstone, *Commentaries* 129). "It is 'a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement.'" *Id.* at 400 (quoting *Secretary of State for Home Affairs v. O'Brien* (1923) A.C. 603, 609 (H.L.)). The "Great Writ" was received into our own law in the colonial period, *id.*, and it is now codified by statute. *See, e.g.,* 28 U.S.C. § 2254 (providing that federal courts shall entertain habeas petitions filed by state prisoners); 28 U.S.C. § 2255 (providing same for federal prisoners). Pursuant to the former statute—the one relevant to this case—a state prisoner may bring a petition for habeas corpus in federal court "only on the ground that he is in

---

[2] *See, e.g., Chavers v. Secretary, Florida Dep't of Corr.*, 468 F.3d 1273, 1274 (11th Cir. 2006) ("We review *de novo* a district court's denial of a habeas petition as untimely.") (citing *Nix v. Secretary for the Dep't of Corr.*, 393 F.3d 1235, 1236 (11th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005)).

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Like all good things, however, the writ may be (and has been) abused. *See Woodard v. Hutchins*, 464 U.S. 377 (1984); *see also, e.g.*, *McCleskey v. Zant*, 499 U.S. 467, 496 (1991) ("The writ of habeas corpus is one of the centerpieces of our liberties. 'But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization.'") (citation omitted). In years past, federal courts were "deluged with a flood" of habeas petitions, and statistics from the Administrative Office of the United States Courts showed that only a very small percentage of the petitions were meritorious. *See* John J. Parker, *Limiting the Abuse of Habeas Corpus*, 8 F.R.D. 171, 172 & n.3 (1948) (noting that between the years 1943-1945, for example, relief was granted in just 76 of the 3,126 federal petitions filed during that period).

Against this historical backdrop, Congress enacted AEDPA in 1996, which, among other things, "included many significant restrictions on the availability of post-conviction relief in the federal courts" and "'incorporate[d] reforms to curb the abuse of the statutory writ of habeas corpus[.]'" *See Medberry v. Crosby*, 351 F.3d 1049, 1058 (11th Cir. 2003) (quoting H.R. Conf. Rep. No. 104-518, at p. 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 944).

In relevant part, AEDPA requires that a state prisoner seeking habeas relief under Section 2254 must bring his federal petition within a year from the date that his state conviction becomes "final," either by the conclusion of his direct review or the expiration of time to seek such review. 28 U.S.C. § 2244(d)(1)(A); *accord Carey v. Saffold*, 536 U.S. 214, 216 (2002). This one-year statute of limitations will be tolled, however, for "[t]he time during which a *properly filed* application for State post-conviction or other collateral review" is pending in the state court. 28 U.S.C. § 2244(d)(2) (emphasis added).

## B.

In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the United States Supreme Court expressly held that a state court motion for post-conviction relief cannot be considered "properly filed" for tolling under Section 2244(d)(2) if the motion was untimely under state law. That case has significant—and potentially dispositive—bearing on this appeal. Before getting to *Pace*, however, and in order to properly understand it, we have to discuss an earlier Supreme Court case: *Artuz v. Bennett*, 531 U.S. 4 (2000).

In *Artuz*, the Supreme Court was called upon to decide if an application for state post-conviction relief that contained a claim that was procedurally barred by New York law was "properly filed" within the meaning of Section 2244(d)(2).

6

531 U.S. at 5.  In deciding that question (which it answered in the affirmative), the

Supreme Court said the following:

> An application is "filed," as that term is commonly understood, when
> it is delivered to, and accepted by, the appropriate court officer for
> placement into the official record.  And an application is "*properly*
> filed" when its delivery and acceptance are in compliance with the
> applicable laws and rules governing filings.  These usually prescribe,
> for example, the form of the document, the time limits upon its
> delivery, the court and office in which it must be lodged, and the
> requisite filing fee.  In some jurisdictions the filing requirements also
> include, for example, preconditions imposed on particular abusive
> filers, or on all filers generally.  But in common usage, the question
> whether an application has been "properly filed" is quite separate
> from the question whether the claims *contained in the application* are
> meritorious and free of procedural bar.
>
> * * *
>
> The state procedural bars at issue in this case—N.Y. Crim. Proc. Law
> §§ 440.10(2)(a) and (c) (McKinney 1994)—simply prescribe a rule of
> decision for a court confronted with claims that were "previously
> determined on the merits upon an appeal from the judgment" of
> conviction or that could have been raised on direct appeal but were
> not: "[T]he court must deny" such claims for relief.  Neither provision
> purports to set forth a condition to filing, as opposed to a condition to
> obtaining relief.  Motions to vacate that violate these provisions will
> not be successful, but they have been properly delivered and accepted
> so long as the filing conditions have been met.  Consequently, the
> alleged failure of respondent's application to comply with §§
> 440.10(2)(a) and (c) does not render it "[im]properly filed" for
> purposes of § 2244(d)(2).

*Id.* at 8-11 (internal citations and footnote omitted).  After noting that time limits

on post-conviction motions are "condition[s] to filing," so that an untimely motion

would *not* be regarded as "properly filed," the Supreme Court went on to say: "We

7

express no view on the question whether the existence of certain *exceptions* to a timely filing requirement can prevent a late application from being considered improperly filed." *See id.* at 8, 11 & n.2 (emphasis added).  Five years later, the Court in *Pace* had to confront the precise question that it left unanswered in *Artuz.*

In *Pace*, a state prisoner in Pennsylvania filed a petition for post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act (PCRA).  544 U.S. at 410.  The PCRA rendered untimely any petition filed more than a year after the judgment became final—unless the petition *alleged* and the petitioner could *prove* that he fell within one of three exceptions, including that the facts upon which the claim was predicated were both unknown to the petitioner and could not have been discovered with due diligence.  *Id.* at 410-11 & n.1; *accord id.* at 422 n.4 (Stevens, J., dissenting).  The Pennsylvania Superior Court dismissed the petitioner's petition as untimely after it found that he had "neither alleged nor proven" that he satisfied one of the three statutory exceptions.  *Id.* at 411.  The petitioner subsequently filed a federal habeas petition, and the respondent moved to dismiss it as untimely.  *Id.* at 411-12.  The District Court recognized that, without tolling, the federal petition was indeed time-barred.  *Id.* at 412.  Nevertheless, it concluded that the petitioner was entitled to statutory tolling for the time that his PCRA petition was pending in state court.  *Id.*  In so holding, the District Court found that, even though the state court had rejected his PCRA petition as untimely, that did not prevent the petition

from being "properly filed" within the meaning of § 2244(d)(2). *Id.* It reasoned that because the PCRA provided judicially reviewable exceptions to the one-year time limit, that time limit wasn't a "condition to filing" but, rather, a "condition to obtaining relief" as the Supreme Court had described those "distinct concepts" in *Artuz. Id.* On appeal, the Third Circuit reversed, and the Supreme Court affirmed, holding:

> As in *Artuz*, we are guided by the "common usage" and "commo[n] underst[anding]" of the phrase "properly filed." *Id.*, at 8, 9, 121 S. Ct. 361. In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.
>
> * * *
>
> . . . [Petitioner] asserts that "condition[s] to filing" are merely those conditions necessary to get a clerk to accept the petition, as opposed to conditions that require some *judicial* consideration. [Respondent] characterizes petitioner's position . . . as a juridical game of "hot potato," in which a petition will be "properly filed" so long as a petitioner is able to hand it to the clerk without the clerk tossing it back. Be that as it may, petitioner's theory is inconsistent with *Artuz*, where we explained that jurisdictional matters and fee payments, both of which often necessitate judicial scrutiny, are "condition[s] to filing." *See* 531 U.S., at 9, 121 S. Ct. 361. We fail to see how timeliness is any less a "filing" requirement than the mechanical rules that are enforceable by clerks, if such rules exist.

9

544 U.S. at 413-15 (internal citation and footnote omitted). In short, the Supreme Court held that "time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)." *Id.* at 417.

This Court has recognized that "[t]he key takeaway from *Pace* is that an untimely application was not, and could not ever have been considered, properly filed." *Hernandez-Alberto v. Secretary, Florida Dep't of Corr.*, 840 F.3d 1360, 1366 (11th Cir. 2016). But that, of course, does not answer the question we face here: was the Rule 3.850 Motion an "untimely application" under state law?

II.

Florida's Rule 3.850(b)(1) provides as follows:

**(b) Time Limitations.** A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final unless it alleges that

(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence[.]

As previously noted, the petitioner argued in his Rule 3.850 Motion that his trial counsel had been ineffective for not informing him about the plea offer from the prosecutor. In arguing that his motion was timely (even though it was filed six

10

years after his judgment and sentence became final, and thus well beyond the two years set out in the rule), he alleged in his motion that he had only recently learned of the plea offer and that he could not have learned of it earlier with the exercise of due diligence. With these allegations, the petitioner was attempting to satisfy the exception to untimeliness provided in Rule 3.850(b)(1).

The state trial court denied the motion. Because the parties disagree about what the trial court actually held in its order—and because the petitioner contends that this appeal largely turns on what the state court held or did not hold—we will quote the Trial Court Order almost in full. In denying the Rule 3.850 Motion, the state trial court said:

> On June 7, 2006, following a jury trial, Defendant was convicted of one count of Aggravated Battery, and sentenced to a term of twenty (20) years incarceration. Defendant's conviction and sentence were affirmed on appeal through a Mandate issued by the First District Court of Appeal on June 20, 2007.
>
>                           * * *
>
> In the instant Motion, Defendant avers that he has recently discovered that his trial counsel failed to convey a ten-year plea offer from the State. He further states that had such a plea offer been conveyed, he would have taken the offer rather than go to trial.
>
> To be considered newly discovered, evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known of it by the use of diligence. Newly discovered evidence must be filed within two (2) years of the date that the evidence could have been discovered through the use [*sic*] due diligence.

11

Defendant's allegations do not meet the parameters of newly discovered evidence. On April 29, 2010, while under oath at a Rule 3.850 evidentiary hearing, trial counsel testified that he reviewed "any potential offers the State had made" and that Defendant rejected any and all State Offers. Assuming *arguendo* that counsel did fail to convey a ten-year offer, Defendant had the opportunity to discover the offer in question within the two-year time limit imposed by Rule 3.850. On July 19, 2007, Defendant filed a petition for writ of mandamus for trial counsel's records, in which he requested copies of all communication from the state attorney's office. Defendant is not entitled to relief for this claim.

Finally, upon review of the instant Motion in conjunction with the record, this Court finds the instant Motion to be frivolous. Defendant is, therefore, cautioned that if he continues to file frivolous *pro se* motions, he will be referred to the Department of Corrections for the imposition of disciplinary proceedings in accordance with section 944.279(1), Florida Statutes, which may include the forfeiture of gain time pursuant to section 944.28(2)(a), Florida Statutes.

Trial Court Order at 1-3 (internal citations, quotation marks, and brackets omitted).

### III.

In considering the petitioner's federal habeas petition, the District Court (as we just did) quoted at length from the state court's order denying the Rule 3.850 Motion. *Jones v. Secretary, DOC*, 2017 WL 275796, at *2-*3 (M.D. Fla. Jan. 20, 2017). After reviewing the order, the District Court found that the state court had rejected the Rule 3.850 Motion as untimely, even though the state court appeared to have "also reached the merits of the claim" when it found the claim "frivolous."

12

*See id.* at \*3.[3] Consequently, the District Court held that the Rule 3.850 Motion was not "properly filed" under *Pace*. *See id*. (citing *Losey v. McNeil*, 2008 WL 4693139, at \*5 (N.D. Fla. Oct. 21, 2008) (Vinson, J.), in turn citing *Pace*). The petitioner contends on appeal that the District Court's ruling was wrong for two reasons.

## A.

The petitioner first argues that the state court did not actually find the Rule 3.850 Motion untimely. *See* Pet. Brief at 17. He says that, "in denying Mr. Jones' Rule 3.850 motion, the state court ruled on the merits of Mr. Jones' new-evidence allegations; it did not rule on whether his motion was untimely on its face." *Id.* at 13-14. The petitioner points out that the state court "never mentioned the word 'untimely,'" and he goes so far as to suggest that it "never [even] alluded to the issue of timeliness." *Id.* at 18. According to the petitioner, these omissions are significant because a state court's ruling that a post-conviction motion is untimely must be clear and unambiguous. *Id.* at 17-18. He calls this a "rule," and he claims

---

[3] The District Court cited to *Sweet v. Secretary, Florida Dep't of Corr.*, 467 F.3d 1311 (11th Cir. 2006), which in turn cited *Carey, supra*, for the proposition that "when a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed.'" *See Sweet*, 467 F.3d at 1318; *see also Carey*, 536 U.S. at 226 (stating that if the state court finds a post-conviction motion untimely, that finding conclusively resolves the issue, "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits").

13

that it is "consistent" with the so-called "plain-statement rule" the Supreme Court applies to state court rulings that pertain to procedural bars. *Id.* at 18 n.4 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case '*clearly and expressly*' states that its judgment rests on a state procedural bar.") (emphasis added)). We disagree with petitioner on both the law and with his interpretation of the Trial Court Order.

Preliminarily, the petitioner has not cited any case law—and we are aware of none—holding that state courts must use particular words or phrases in ruling on the untimeliness of a post-conviction motion. Magic words are not required. Nor does a state court's ruling have to be clear and unambiguous. To the contrary, the state court doesn't even have to make a timeliness ruling *at all* before a federal court can find that it was untimely and not "properly filed" for Section 2244(d)(2) purposes. *See generally Evans v. Chavis*, 546 U.S. 189 (2006); *see also id.* at 207-08 (Stevens, J., concurring in judgment) (noting that because untimeliness rulings "need not be explicitly stated," it is "sometimes easy and sometimes difficult" to ascertain what, if anything, the state court actually determined as to timeliness; the "easiest cases" are those where the state court "expressly states that a petition was either untimely or timely," whereas the more "difficult . . . cases" are those where

14

the state court "rules on the merits without *any* comment on timeliness") (emphasis added).[4]

Take *Gorby v. McNeil*, 530 F.3d 1363 (11th Cir. 2008), for example. In that case, the Supreme Court of Florida had reviewed the trial court's denial of a Rule 3.851 motion—the capital version of Rule 3.850—where the movant sought relief based on *Crawford v. Washington*, 541 U.S. 36 (2004) (barring testimonial hearsay under the Confrontation Clause unless the witness is unavailable and defendant had prior opportunity for cross-examination). The state trial court originally denied the motion as untimely and the Supreme Court of Florida affirmed, but it "did not state explicitly that Petitioner's motion was time-barred under Florida law[.]" 530 F.3d at 1367. Instead, Florida's Supreme Court denied the Rule 3.851 motion "based on our decision in *Chandler*." *Id.*[5] Without any language "explicitly" saying that the Supreme Court of Florida denied the Rule 3.851 motion as untimely, the petitioner argued there (just as petitioner does here) that the state court decided the motion on

---

[4] The petitioner notes in his brief that in *Sweet, supra,* we relied on an "unambiguous" finding of untimeliness in holding that that the petitioner's state court motion wasn't properly filed. *See* 467 F.3d at 1318 ("when a state court *unambiguously* rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2)") (emphasis added). *Sweet*, in turn, cited *Carey, supra*, where the Supreme Court said that: "If the California Supreme Court had *clearly* ruled that Saffold's 4 ½-month delay was 'unreasonable,' that would be the end of the matter[.]" *See* 536 U.S. at 226 (emphasis added). But to say that "unambiguous" and "clear" untimeliness rulings by state courts are *sufficient* is not the same thing as saying that they are *necessary*. As just indicated in the text, and as will be discussed further above, they are not.

[5] In *Chandler v. Crosby*, 916 So.2d 728 (Fla. 2005), the Supreme Court of Florida held that *Crawford* would not be applied retroactively.

15

its merits, and not on timeliness grounds. *See id.* at 1366. He further argued that resolving the motion on its merits rendered it "properly filed," *i.e.*, timely. *See id.* at 1366-67. The petitioner based his argument there (once again, just as petitioner does here) on the plain-statement rule in the procedural default context. *See id.* at 1367. This is what *Gorby* had to say about that:

> Petitioner cites the plain-statement rule set forth in *Parker v. Sec'y for the Dept. of Corr.*, 331 F.3d 764 (11th Cir. 2003): "'[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" *Id.* at 771 (quoting *Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989)). Petitioner suggests that the plain-statement rule for procedural default should apply to AEDPA's "properly filed" requirement as well. Because the Florida Supreme Court—here, the last state court to render judgment—did not say that his motion was untimely, Petitioner claims that the state supreme court must have reached the merits and that, as a result, his motion was properly filed.
>
> That procedural default is distinct from the "properly filed" requirement for tolling AEDPA's statute of limitations is clear. *See Artuz*, 121 S. Ct. at 364 ("[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." (emphasis in original)). Petitioner offers no explanation why the plain-statement rule for procedural default should be extended to AEDPA's "properly filed" requirement. We see no reason to extend the rule here.

*Id.* at 1367. Citing and quoting *Evans,* 546 U.S. at 189, we went on to say that if the state court doesn't clearly rule on the timeliness of a post-conviction motion, "'the *federal court* must decide whether the filing' was timely under state law."

16

*See* 530 F.3d at 1367 (emphasis added).  After independently reviewing the record,

we decided that petitioner's Rule 3.851 motion was untimely.  *Id.* at 1367-68.  Our

opinion concluded with the following:

> We are applying a federal statute and are guided by congressional
> intent.  We will not allow the tolling of AEDPA's limitations period
> when it is clear that the petitioner failed to seek timely review in state
> court.  *Cf. Carey*, 122 S. Ct. at 2141 (observing that the "willingness
> to take [the words 'on the merits'] as an absolute bellwether [for
> timeliness] risks the tolling of the federal limitations period even
> when it is highly likely that the prisoner failed to seek timely review
> in the state appellate courts").  To do otherwise would "undermine the
> statutory purpose of encouraging prompt filings in federal court in
> order to protect the federal system from being forced to hear stale
> claims."  *Id.*

*Id.* at 1368.[6]

We reached a similar conclusion in *Walton v. Secretary, Florida Dep't of

Corr.*, 661 F.3d 1308 (11th Cir. 2011).  The petitioner in that case, Jason Walton,

filed a second state habeas petition in the Supreme Court of Florida, which denied

the petition as successive.  *See id.* at 1309.  Like in *Gorby*, "[t]he Florida Supreme

Court did not address whether Walton's second habeas petition was timely."  *Id.*

---

[6] We note that in *Gorby* the petitioner appeared to concede (or at least he did not dispute) that his state motion was untimely.  *See* 530 F.3d at 1367 ("Strictly speaking, *Petitioner does not dispute* that his motion actually was untimely under Florida's Rule 3.851(d). . . . Even if we were to accept that the Florida Supreme Court reached the 'merits,' consideration of the merits cannot alone convert a motion for post-conviction relief *that no one disputes is time-barred under state law* into a properly filed motion for tolling purposes under AEDPA.") (emphasis added).  Here, by contrast, the petitioner doesn't appear to make the same concession.  Regardless, that factual distinction doesn't undermine the point of law cited above, which is simply that, in the AEDPA "properly filed" context, the state court doesn't have to issue a ruling on the timeliness of a post-conviction motion—let alone clearly and unambiguously—and the federal court can review the record and make the timeliness determination for itself.

17

The petitioner subsequently filed a federal habeas petition, but the District Court dismissed the petition as untimely because it determined that the state petition was not "properly filed" and thus did not toll AEDPA's one-year statute of limitations. In affirming, the *Walton* panel cited *Evans* and *Gorby* and concluded that it was of no moment that the Supreme Court of Florida did not address the timeliness of the second state habeas petition:

> When a state court has not addressed the timeliness of an application for collateral relief, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 at 198, 126 S. Ct. at 852. We "will not allow the tolling of AEDPA's limitations period when it is clear that the petitioner failed to seek timely review in state court." *Gorby v. McNeil*, 530 F.3d 1363, 1368 (11th Cir. 2008). Walton's second state habeas petition was untimely, and the district court did not err by dismissing his petition.

*Id.* at 1312.

While the foregoing precedent authorizes us to independently assess the timeliness of the petitioner's Rule 3.850 Motion, we need not do so because we conclude that the state trial court considered the issue and decided that the motion *was* untimely—albeit not clearly and unambiguously—and we are required to give deference to that ruling. Notwithstanding the petitioner's contention that the state court never ruled on or "alluded" to untimeliness in its order, we believe that is the only reasonable and logical way to read the Trial Court Order (even though it then

18

went on to find that the claim was "frivolous," which is at least arguably a ruling on the merits).[7]

The state court noted the following in sequential fashion: (1) the petitioner was convicted in 2006; (2) his conviction was affirmed by the First District Court of Appeal in 2007; (3) in the pending motion (filed six years later), he claimed to have had newly discovered evidence that his trial counsel failed to tell him about the plea offer; (4) assuming that claim was true, such evidence was required to be filed within two years from when it *could* have been discovered with the exercise of due diligence; (5) the petitioner "had the opportunity to discover the [evidence] in question within the two-year time limit imposed by Rule 3.850" (specifically, in July 2007, when the trial court granted his mandamus petition which gave him the *opportunity* to access all communication between the prosecutor and his attorney, as long as he made reasonable payment for copies); and therefore (6) he was "not entitled to relief for this claim." Trial Court Order at 1-2. If the state court wasn't ruling on timeliness, why would it have engaged in the preceding analysis, which

---

[7] The respondents dispute that the state court ruled on the merits (even in the alternative) because "[t]here was no discussion of the merits—the alleged ineffective assistance of counsel claim—anywhere in the order." Resp. Brief at 26. They maintain that the state court found the motion "frivolous" only *because* it was untimely. *See id.* Since it would have no bearing on the outcome of this appeal even if the state court had reached the actual merits, *see supra* note 3 and the text above, we don't need to resolve this dispute.

19

had nothing to do with the *merits* of the ineffective assistance of counsel claim but, rather, had everything to do with *timing* of that claim?

Florida cases are legion in denying Rule 3.850 motions when the alleged "new evidence" could have been discovered within the rule's two-year deadline. *See, e.g., Jules v. State,* 233 So.3d 1196 (Fla. 3d DCA 2017) (Rule 3.850 motion "time-barred" where the evidence "could [have been] ascertained . . . within [the] two-year period"); *Gaston v. State,* 141 So.3d 627 (Fla. 4th DCA 2014) (Rule 3.850 motion "untimely" where the evidence "was available before the two-year deadline had expired"); *Schultheis v. State*, 125 So.3d 932 (Fla. 4th DCA 2013) (Rule 3.850 motion "untimely" where the evidence "was unquestionably available to both appellant and his attorney prior to the two-year deadline"); *Santos v. State*, 79 So.3d 112 (Fla. 4th DCA 2012) (Rule 3.850 motion "untimely" where the new evidence "could have been discovered with due diligence within the two-year time limit"); *Rogers v. State*, 932 So.2d 620 (Fla. 4th DCA. 2006) (Rule 3.850 motion denied for "untimeliness" where the evidence "could have been discovered through the exercise of due diligence"); *Scott v. State*, 702 So.2d 309 (Fla. 5th DCA 1997) (Rule 3.850 motion "untimely" where the alleged new evidence "could have been discovered through the exercise of due diligence within the two-year time period").

It is true that in each of the foregoing cases, the state courts used the word "untimely" or some derivation. In denying the motions, the courts in those cases

essentially said that the movants could have discovered the alleged new evidence sooner and filed their Rule 3.850 motions within two years, but they did not; *and therefore, their motions were untimely*. While the "therefore" clauses made the state court rulings explicit, it seems apparent to us that their omission would not have negated the court's obvious rulings on timeliness. Nor can that be said here. We conclude that based on the language in the Trial Court Order, an untimeliness finding was subsumed within the state court's denial of relief because (according to that court) the petitioner *could* have discovered the new evidence several years before. To hold otherwise would be tantamount to saying that "magic words" are required, which, as we have stated, is not the law.

In short, the state court ruled that the Rule 3.850 Motion was untimely, and we are required to defer to that ruling. *E.g., Stafford v. Thompson*, 328 F.3d 1302, 1305 (11th Cir. 2003) (citing *Webster v. Moore,* 199 F.3d 1256 (11th Cir. 2000)). That necessarily means that the motion wasn't "properly filed," and thus it didn't toll AEDPA's one-year statute of limitations. *See Pace*, 544 U.S. at 417 (when a state court rejects the petitioner's post-conviction motion as untimely, "it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)"). *Pace* is quite emphatic on this point: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (quotation marks and brackets omitted).

B.

Not so fast, says the petitioner.  His second argument is that *Pace* does not even apply here because in that case the Supreme Court was addressing "a narrow issue" (*i.e.*, whether the mere *existence* of statutory exceptions to a timely filing requirement can prevent an untimely motion from being considered improperly filed), and it involved a "materially distinguishable" post-conviction scheme (*i.e.*, the Pennsylvania statute at issue there required movants to both *allege and prove* that an exception to the limitation period applied, as opposed to Rule 3.850 which only requires movants to *allege* that they fall within an exception to the limitation period).  *See* Pet. Brief at 21-24.  Because *Pace* does not apply here, the petitioner further argues, that means pre-*Pace* circuit precedent is still binding on us.  *See id*.  And, according to that precedent, a Rule 3.850 motion is a "properly filed" tolling motion under Section 2244(d)(2) so long as the movant alleged—as the petitioner here did—that the motion fell within a timeliness exception, even if the state court subsequently found the motion to be untimely.  *See Delancy v. Florida Dep't. of Corr.*, 246 F.3d 1328, 1331 (11th Cir. 2001) ("Because Rule 3.850 requires only that the motion *allege* that facts 'were unknown to the movant . . . and could not have been ascertained by the exercise of due diligence' we find that if Delancy's Rule 3.850 motion in fact *alleges* 'newly discovered evidence,' it was 'properly filed.'") (emphasis added); *Drew v. Florida Dep't of Corr.*, 297 F.3d 1278, 1285

22

(11th Cir. 2002) (holding pursuant to *Delancy* that "Drew's third [Rule] 3.850 motion would have been properly filed *despite its untimeliness* if it had [merely] *alleged*" that the new evidence was unknown and couldn't have been discovered with the exercise of due diligence) (emphasis added).  These arguments, although they have some superficial appeal, don't hold up under closer examination.[8]

At the outset, *Pace* is not nearly as "narrow" in its scope as the petitioner suggests.  As we have noted several times now, the Supreme Court emphatically held in that case that when a state court finds a post-conviction motion untimely "'*that [is] the end of the matter*'" for tolling purposes.  544 U.S. at 414 (emphasis in the original) (quoting *Carey,* 536 U.S. at 226).  If there was any doubt about that holding (and we fail to see how there could be based on the language in *Pace*), that doubt was later cleared up in *Allen v. Siebert*, 552 U.S. 3 (2007)—discussed further *infra*—where the Supreme Court stated that *Pace* was "plainly meant to [lay down] a general rule." *See id.* at 6.  And that general rule is simply this: "[T]ime limits, *no matter their form*, are 'filing' conditions,' *and . . . a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely*." *See id.* (quoting *Pace*, 544 U.S. at 417) (second emphasis added).

---

[8] Indeed, we have already rejected these same arguments in an unpublished opinion.  *See Sykosky v. Crosby*, 187 F. App'x 953, 958 (11th Cir. 2006) (finding that both *Delancy* and *Drew* "conflict with the Supreme Court's decision in *Pace* and must be disregarded," and also finding the "distinction" between what is required by Rule 3.850 and the Pennsylvania statute in *Pace* to be "unavailing").

23

As indicated, *Delancy* and *Drew* can both be read for the proposition that a Rule 3.850 motion is a properly filed tolling motion as long as the movant *alleged* in the motion that it fell within the timeliness exception, *regardless of whether the state court later found the motion untimely*.  This obviously cannot be reconciled with the "general rule" laid down in *Pace*.  Thus, to the extent that *Delancy* and *Drew*—and a third case that the petitioner has cited which relies on both cases for that legal interpretation, *Estes v. Chapman*, 382 F.3d 1237 (11th Cir. 2004)—can be read to suggest that time limits are not filing conditions, and/or that a post-conviction motion that has been rejected as untimely by the state court may still be considered "properly filed" as long as the motion merely *alleges* that it falls within an exception, those cases have been overruled by *Pace* and must be disregarded.[9]

---

[9] It is worth noting that under the petitioner's *Delancy*/*Drew*/*Estes*-based argument, all a Rule 3.850 movant would have to do to toll the time for filing a Section 2254 petition—at least until he is sanctioned for abusing the rule and barred from further filings—is allege (in motion after motion) that he has new evidence that couldn't have been discovered within two years of his judgment and sentence, and that would be sufficient to toll the statute of limitations even if the state court later finds (in order after order) that the motions were untimely.  *Pace* forecloses that situation.  As the respondents have persuasively argued, to hold otherwise would mean that no matter how frivolous the motions a petitioner filed, and no matter whether they were filed in obvious bad faith, the time would toll until the state post-conviction court ordered the motions dismissed and the highest state appellate court finally ended the litigation, *see* Resp. Brief at 22, and that is precisely the sort of abusive situation that the Supreme Court refused to countenance in *Pace*:

> On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions.  This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

544 U.S. at 413.

24

And finally, we address the petitioner's interrelated (but separate) argument that *Pace* should not apply to this case insofar as the Pennsylvania statute at issue there required movants to *allege and prove* that their motions were timely (and the petitioner in that case didn't do so), whereas the plain language of Rule 3.850 only requires movants to *allege* timeliness (and the petitioner here did). Although the petitioner has identified a distinction between these two post-conviction schemes (and thus a distinction between the facts of *Pace* and this case), it is a distinction without any meaningful difference. On this point, we find the Supreme Court's decision in *Allen v. Siebert* analogous and instructive.

The petitioner in *Allen* filed a petition for post-conviction relief in Alabama state court. 552 U.S. at 4. The state court denied his petition as untimely because it was brought three months too late under Rule 32.2(c) of the Alabama Rules of Criminal Procedure, after which the petitioner filed a federal habeas petition. *Id*. Relying on *Pace*, the District Court held that the state post-conviction petition was not "properly filed" (and, thus, not a tolling motion), and it dismissed the federal petition as untimely. *See id.* at 4-5. We reversed on appeal, distinguishing *Pace* on the ground that "Rule 32.2(c), unlike the statute of limitations at issue in *Pace* [which was a jurisdictional time bar under Pennsylvania law], 'operate[s] as an affirmative defense.'" *See id.* at 5 (quoting *Siebert v. Allen*, 480 F.3d 1089, 1090 (11th Cir. 2007)). In reversing us, the Supreme Court said:

25

The Court of Appeals' carveout of time limits that operate as affirmative defenses is inconsistent with our holding in *Pace*. Although the Pennsylvania statute of limitations at issue in *Pace* happens to have been a jurisdictional time bar under state law, the jurisdictional nature of the time limit was not the basis for our decision. Rather, we built upon a distinction that we had earlier articulated in *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), between postconviction petitions rejected on the basis of "'filing' conditions," which are not "properly filed" under § 2244(d)(2), and those rejected on the basis of "procedural bars [that] go to the ability to obtain relief," which are. *Pace, supra*, at 417, 125 S. Ct. 1807 (citing *Artuz, supra*, at 10-11, 121 S. Ct. 361). We found that statutes of limitations are "filing" conditions because they "go to the very initiation of a petition and a court's ability to consider that petition." *Pace*, 544 U.S., at 417, 125 S. Ct. 1807. Thus, we held "that time limits, *no matter their form*, are 'filing' conditions," and that a state postconviction petition is therefore not "properly filed" if it was rejected by the state court as untimely. *Ibid*. (emphasis added).

In short, our holding in *Pace* turned not on the nature of the particular time limit relied upon by the state court, but rather on the fact that time limits generally establish "conditions to filing" a petition for state postconviction relief. Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a "condition to filing," *Artuz, supra*, at 9, 121 S. Ct. 361—it places a limit on how long a prisoner can wait before filing a postconviction petition. The fact that Alabama's Rule 32.2(c) is an affirmative defense that can be waived (or is subject to equitable tolling) renders it no less a "filing" requirement than a jurisdictional time bar would be; it only makes it a less stringent one. . . .

Excluding from *Pace's* scope those time limits that operate as affirmative defenses would leave a gaping hole in what we plainly meant to be a general rule[.]"

*Id.* at 5-6 (some internal citations omitted).

To repeat, *Pace* holds that a state post-conviction motion is not, and cannot ever be, "properly filed" if it was rejected by the state court as untimely. To limit

this clear holding to cases involving movants who are required (but fail) to "allege and prove" that their motion was timely, and not apply the holding to movants who are only required to (and do) "allege" timeliness, would—like in *Allen*—"leave a gaping hole in what [*Pace*] plainly meant to be a general rule." 552 U.S. at 6. We are not aware of any case—by any court, anywhere—that has adopted the crabbed reading of *Pace* that the petitioner suggests, and we will not be the first to do so.[10]

## IV.

Under AEDPA, Jones had one year from the date his conviction became final to bring his Section 2254 petition for habeas corpus. Unless his Rule 3.850 Motion constituted a tolling motion, it is undisputed that he missed that deadline. Because *Pace* clearly holds that when a state court finds a post-conviction motion untimely "'*that [is] the end of the matter*'" and the motion cannot be considered a

---

[10] In fact, it appears that the petitioner's argument on this point was actually rejected by *Pace* itself *sub silentio*. In *Pace*, the Supreme Court was resolving a circuit split that developed post-*Artuz*. *See* 544 U.S. at 412-13 & n.3 (comparing *Dictado v. Ducharme*, 244 F.3d 724, 726-28 (9th Cir. 2001), with *Merritt v. Blaine*, 326 F.3d 157, 162-68 (3d Cir. 2003)). Notably, the case that turned out to be on the losing side of that split and abrogated by *Pace*—*Dictado*—did not involve a post-conviction scheme, like in *Pace*, that required movants to "allege and prove" the existence of newly discovered evidence that couldn't have been discovered earlier with due diligence. Instead, the statute there, like here, simply required that a motion filed thereunder be "based . . . on" (*i.e.*, allege) such "newly discovered evidence." Wa. Rev. Code § 10.73.100(1). Significantly, the petitioner in *Dictado* had done exactly that. *See* 244 F.3d at 728 (holding that petitioner's Section 10.73.100(1) motion "was properly filed [because he] *asserted* that it was based on newly discovered evidence," which was all that the statute required) (emphasis added). Because the Supreme Court expressly abrogated *Dictado* with its opinion in *Pace* (and because the facts of that case are similar to ours), the "allege" vs. "allege and prove" distinction that the petitioner has argued is unpersuasive and must be rejected.

27

tolling motion, and that is what the state court did here, and because *Pace* applies to this case, we must affirm the District Court's dismissal of his federal petition as untimely.

Furthermore, as and to the extent discussed above, *Delancy v. Florida Dep't. of Corr.*, 246 F.3d 1328 (11th Cir. 2001); *Drew v. Florida Dep't of Corr.*, 297 F.3d 1278 (11th Cir. 2002); and *Estes v. Chapman*, 382 F.3d 1237 (11th Cir. 2004), have been overruled by *Pace* and must be disregarded.

**AFFIRMED.**